Court. Again, my name is Brian Milliken. I represent the appellant in this case, William Olson, who is a police officer. To start, I would like to say that, and we've addressed some of these issues already in the previous case, but from our perspective, this is a legal issue, is whether or not this was a protected activity. Well, let me ask about that. It does seem that a primary contention here is whether there's a genuine issue of fact existing, and how does that affect our jurisdiction? Well, I think under a number of cases that we've cited, Supreme Court, New York Times v. Sullivan, Doe v. Pulaski, which is an Eighth Circuit case, as well as Stern v. Schulnice, which directly addressed this issue of whether or not plaintiff's speech is a legal question, I think that those cases dictate that it is. And I also think that there's also a legal question with regard to whether or not the law was clearly established, which we've already talked about. I want to ask about that as well. You've formulated the righted issue very differently, obviously, than the other side, but it seems like you're asking us to reformulate it differently than the U.S. Supreme Court has characterized it in Hartman v. Moore, for example, the right to be free from retaliation for engaging in First Amendment activity. Is that the right that's at issue here? Well, certainly, if they were peaceably protesting, we would agree that an adverse action was taken. That would certainly fall into potentially a violation of constitutional right to free speech. But our contention is that when you look at the totality of circumstances, it's not just what Mr. Brandy was saying. It's his demeanor, which is depicted on the videos. It's also the other protesters that are aggressively coming around each side and yelling and screaming. So you have to look at it in terms of what the officers were facing, including Olson, at the time that he decided to deploy the pepper spray. But again, isn't that analyzed under the third prong of the retaliatory analysis? Because you'd have to determine whether the speech was the but-for cause of the adverse action. Yes, I think that the third prong is certainly something that we've addressed here. But I think this really does fall into the first prong, which is, was it a protected activity? And we believe that at that point, I think it was a protected activity until they refused commands to get back and they continued to threaten officers. And I say they, I mean those people aren't necessarily. But I think it's more, I think we have to get across the first threshold prong, which is, was it a protected activity? And we believe it was not. Don't we have to look at the facts in the light most favorable to Brandy, which would be that the shout from the crowd was, shut them down rather than shoot them? Whether it's shut them down or shoot them, or whether even Olson knew what was exactly said, I think that you can see from his reaction that he perceived that as a threat. And, you know, again, we can't really, the video's not clear on what that was, but that was kind of the final straw, so to speak, after all of these other activities were occurring. In fact, Justice Scalia referred to but-for-cause as the final straw. But you could look at any different component of the animus to find a but-for-cause, can you not? It might, there might be more than one but-for-cause of an adverse action. It could be the shout from the audience. It could also be the speech of Mr. Brandy. It could be. So why isn't that a jury issue? Well, because I think that the court still has to go through the analysis to figure out whether or not this is protected speech. And I think that the court has to also go through the analysis of whether or not this was a right that was clearly established, which I don't think in this case happened. I think that there was a general statement of, you know, people have a right to peacefully protest, and we agree with that. Well, the Supreme Court and this court have said repeatedly that the right is the right to be free from retaliation for engaging in First Amendment activity. You're asking us to reformulate that, aren't you? No, what I'm asking the court to do is find that this wasn't First Amendment activity. So that may take us to the threat then. Who determines whether it was a threat? Is it a fact question or a legal question? I think that the court should look at the totality of the circumstances, not just a particular threat, but that is a legal question, especially when we've got a fully developed record, which we have in this case. Counsel, how would you describe the clearly established right here? I mean, what level of generality? Can you put it in a sentence or two? I think that, again, we agree with the general statement that people have a right to protest peaceably, but we believe that all the cases cited and the case we cited, which is Bernini, is more analogous, if that answers your question. Yeah, I mean, often in cases we have to put out the level of generality and state it in a sentence or two, but I take your point. I mean, that it's more specific than your colleague is suggesting. I mean, the courts have said that you have to have a set of particularized facts that are somewhat similar to at least the situation we have here, and I think Bernini is the only case that's been cited that's anywhere close to being similar to these particularized facts.  Thank you. Thank you, Your Honor. Thank you. Mr. Laird. Please support. Once again, our position is very much aligned with that of Officer Olson's in that this was not protected First Amendment activity, and therefore there was no constitutional violation. One of the things that I'll address first is the discussion as to whether or not Well, the first thing is whether or not this is a legal issue. Of course, going back to New York Times for Sullivan that Mr. Milliken mentioned, it requires that the appellate court re-review, when a full record has been developed as here, review the record itself to determine whether or not the First Amendment activity was protected or whether it crosses that line. I think that this fits squarely within that, that we need to review that here. This is not whether or not the activity itself falls within the First Amendment confines. I think it's something that the court needs to decide. It's not up for the jury. As for the question as to whether or not, relating to the but-for causation, this was addressed in the Laney case when the court looked at but-for causation and then talked about alternative explanations and whether or not, absent any First Amendment issue, whether or not the same action would have been taken. The answer in that case was yes, and it is yes in this case as well. If somebody's shouting threats, the threats and the statements and the failure to obey were not being followed by the people there, and only in response to that other shout from that unknown individual did the pepper spray get deployed. Counsel, even if I were to agree with you, how can this court take that away from the jury? Because that's, once we've determined that the, again, once you look at it and if you determine that it's, for the same reason that we took it from the jury in Laney and affirmed it, because the alternate explanation provides whether or not that action would be taken without the First Amendment activity, that we don't believe existed, but the First Amendment and I think that that's a question for the court, not for the jury. And I only have 30 seconds left and I have nothing more to add outside the briefing, so we'll rest on our submissions. Thank you. Thank you. Mr. Wersch. I think, I mean, we've already talked about this at length, so I don't want to belabor it, but the court zeroing in on the issue that this is a question of fact that needs to be decided by a jury. I think the, as we discussed, the language of Mr. Brandy, while yes, he was upset and he used some words, I don't think, I think a jury can view the totality of the circumstances as Mr. Milliken wants to view and say that these were not threats, that this was protected activity, that he was simply expressing his anger. I mean, you see in the video just minutes before him walking next to Reverend Gray, moments before he's body slammed by these officers. So, yes, he did get upset, but that doesn't turn those words into threats as a matter of law, something that a jury has to decide here. Yeah, and I think there's also, I mean, there is a public policy concern here in that, you know, having been engaged with some of the protesters, I mean, things do get heated sometimes, but the mere fact that something gets heated doesn't allow someone to pepper spray that person or even a whole crowd. That by itself is not sufficient, and if we affirm this behavior and say as a matter of law that what he did was right, then we risk all sorts of police uses of force on people who are peacefully protesting. On the issue of clearly established, this court has said time and again that peaceful protesters being, chemical munitions used on peaceful protesters is clearly established law and has been for many years. I mean, Megan Green, again, as we talked about. You've got the Kurashi case, Kurashi versus St. Louis County, or St. Charles County, and a host of other cases that have held specifically that, and not to mention the one we were discussing before, Welch? I'm blanking. Hartman? What's that? Hartman versus Moore. No? Hartman versus Moore, but also I was thinking of, sorry, never mind. Well, counsel, isn't one of the difficulties here is that the Supreme Court seems to have characterized the right at issue in First Amendment retaliation claims with a lot more generality than they do in other contests. How much specificity is required and how much generality is allowed? Well, I think in this case, you've had a number of decisions where the notion of using chemical munitions, which is what was done here, on peaceful protesters at police protests, I think that's sufficient, and I think this court has ruled on that in numerous protest situations. I'm sorry, Welch v. Dempsey was the other one I was talking about, the recent decision, where the woman was videotaping on the side at a police protest and was targeted by chemical munitions. I think this decision is clearly established. I think the officer would have known that he could not use pepper spray on a peaceful protester. I think the other officers, like Lieutenant Jemerson, who agree with that, also knew that. That's why they said he shouldn't have done what he did. In Judge Hamilton's order, she indicates that there's a fact issue as to whether the use of the pepper spray was at least in part in retaliation. How do you interpret the in part? In other words, could you have a situation where maybe the protest was illegal but still peaceful? What does in part mean? I think if I understood the judge correctly, she was saying that he had to be motivated in part by the protest and the speech in order to do it. What's the other part? I guess that's what I'm getting at. Let's assume there's at least a fact question. Quite frankly, I think there probably is as to what the motivation was here. There may very well be a fact issue as to whether Officer Olson was motivated at least in part in retaliation for the statements Mr. Brandy made. Let's assume that. What's the other part that the judge is referring to? Honestly, I don't know. I think that under these circumstances, obviously he argues that there was a police purpose to do this, but I don't think the evidence supports that. I guess what I'm getting at, does that then get us more into the Fourth Amendment realm? If you have an illegal assembly, let's say, and you use force to disperse it, does that take us out of the First Amendment into the Fourth Amendment, which then we do talk about, well, use of lethal force would probably be excessive. Let's assume that. But is pepper spray excessive? Are we starting to get into a little bit of the Fourth Amendment analysis there? I don't think so, Your Honor. I guess I understood Judge Hamilton just to be talking about his motivations, that it was whether or not he was motivated in part by the retaliatory speech. I think if that is more akin to—I think maybe she was looking at maybe the substantial factor test, which I know that the court has recently addressed, but I still think under the but-for test here, the question that was posed in Laney and by the Supreme Court in the A's is, would the use of pepper spray have occurred absent the retaliatory motive? And I think based on all of Officer Olson's activities, his goading, his coming towards the protesters, that a jury could find that, in fact, the use of pepper spray would not have occurred absent his retaliatory motive. Unless the court has any further questions, I think we've covered it. Can I ask an unrelated question? Sure. There was a very fine criminal defense attorney in Kansas City by the name of James Warsh. I think he's still a very fine criminal defense attorney. Is he any relative? So not to do too much of this, he's a distant cousin, like a fourth cousin. But weirdly enough, my name is James Robert Warsh, Jr., and he's James Robert Warsh. So by fortune, I have the same name, but unfortunately, he's not my father. But we have met, and he's a very good man. Pardon me? We have met, and he's a very good man. He is a wonderful man. Thank you. Thank you. We have time left. You have 33 seconds. All right. All right. We appreciate all of your arguments. They were finally presented, and the case is submitted. Are there any cases left for argument today? No, Your Honor. The court will be in recess.